<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

```
GRANT HEILMAN PHOTOGRAPHY, INC.  )
and GRANT HEILMAN,               )
                                 )   Civil Action
            Plaintiffs           )   No. 11-cv-01665
                                 )
        vs.                      )
                                 )
JOHN WILEY & SONS, INC. and      )
JOHN DOE PRINTERS 1-10,          )
                                 )
            Defendants           )
```

                       *    *    *

APPEARANCES:
        MAURICE HARMON, ESQUIRE
            On behalf of Plaintiffs

        DEBORAH H. SIMON, ESQUIRE
            On behalf of Defendant John Wiley & Sons, Inc.

                       *    *    *

                   <u>O P I N I O N</u>

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on the Motion of
Defendant John Wiley & Sons, Inc. for Partial Dismissal of
Plaintiffs' Complaint, which motion was filed April 11, 2011.
Plaintiffs' Response in Opposition to Partial Motion to Dismiss
was filed May 3, 2011.  The motion for partial dismissal, having
been fully briefed, is ripe for disposition.

        For the reason expressed below, I deny defendant
Wiley's motion for partial dismissal.  Specifically, I deny
defendant Wiley's motion because plaintiffs' Complaint adequately
pleads a claim for common-law fraud under Pennsylvania law, and

because the fraud claim asserted by plaintiffs is not barred by Pennsylvania's gist-of-the-action doctrine.

JURISDICTION

This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), and pursuant to 28 U.S.C. § 1400(a).

COMPLAINT

On March 8, 2011, plaintiffs filed a three-count Complaint, which includes a demand for jury trial. Specifically, Count I is a claim for copyright infringement against defendant Wiley, in violation of 17 U.S.C. §§ 501-513. Count II is a claim for common-law fraud against defendant Wiley. Count III is a claim for copyright infringement against defendant John Doe Printers 1-10, in violation of 17 U.S.C. §§ 501-513. Plaintiffs allege that the identity of these printers is known to defendant, but unknown to plaintiffs.

Plaintiffs' prayer for relief seeks a preliminary and permanent injunction against defendants and anyone acting in concert with them. Plaintiffs seek to enjoin defendants from copying, displaying, distributing, selling or offering to sell plaintiffs' photographs, both described in the Complaint and not

-2-

included in this suit.  Injunctive relief is authorized by
17 U.S.C. § 502.

Plaintiffs also seek impoundment of all copies of
photographs used in violation of their copyrights as well as all
related records, and destruction or other reasonable disposition
of the photos upon final judgment, pursuant to 17 U.S.C. § 503.

Plaintiffs additionally seek actual damages and all
profits derived from unauthorized use of their photographs, or
statutory damages if they so elect.  Finally, plaintiffs seek
reasonable attorney's fees, costs, punitive damages against
defendant Wiley, and other relief as the court deems proper.

The common-law fraud claim asserted in Count II is the
subject of defendant Wiley's motion for partial dismissal.

<u>CONTENTIONS</u>

Defendant Wiley contends that Count II of plaintiffs'
Complaint, which asserts a claim of fraud pursuant to
Pennsylvania common law, should be dismissed for two reasons.
First, defendant Wiley contends that plaintiffs failed to plead
their fraud claim with sufficient particularity to satisfy
Federal Rule of Civil Procedure 9(b).[1]  Second, defendant Wiley
contends that plaintiffs' fraud claim is barred by Pennsylvania's
"gist-of-the-action" doctrine.[2]

---

[1]      Defendant's Memorandum at pages 1-3.

[2]      Defendant's Memorandum at pages 3-6.

-3-

Plaintiffs contend that Count II of their Complaint should not be dismissed.  First, plaintiffs contend that they plead their fraud claim with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).[3]  Second, plaintiffs contend that Pennsylvania's gist-of-the-action doctrine does not bar their fraud claim because the alleged fraud predates the parties' contract and induced the formation of the contract.[4]

STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with

---

[3]     Plaintiffs' Response at pages 3-7.

[4]     Id. at pages 7-12.

−4−

Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim [for] relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[5]

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief."  Fowler, 578 F.3d at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately

---

[5]    The Opinion of the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly applies to all civil suits in the federal courts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and that the plaintiff is entitled to relief.  Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

As the Supreme Court explained in Iqbal, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully."  Iqbal, 556 U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

prevail on the merits." <u>Phillips</u>, 515 F.3d at 231.  Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211 (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." <u>Iqbal</u>, 556 U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

-6-

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

<u>DISCUSSION</u>

<u>Adequacy of Complaint</u>

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The United States Court of Appeals for the Third Circuit has stated that "[p]ursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)(quoting Lum v. Bank of America, 361 F.3d 214, 223-224 (3d Cir. 2004). In order to satisfy Federal Rule of Civil Procedure 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation in a fraud allegation." Frederico, 507 F.3d at 200.

Under Pennsylvania law, the elements of a claim of fraudulent misrepresentation are:

> (1) A representation (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.

Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d 278, 290 (Pa.Super.Ct. 2010).

Defendant Wiley asserts that the Complaint is "wholly devoid of factual support—much less particularized factual support", and, therefore, that plaintiffs' fraud claim asserted in Count II must be dismissed under the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).[6]

Specifically, defendant Wiley interprets plaintiffs' Complaint, and Count II specifically, as alleging "that Wiley has acted fraudulently in every single licensing transaction that has occurred between Wiley and Plaintiffs from 1995 to [the present]."[7]  Defendant Wiley argues that the Complaint fails to state a fraud claim because "Plaintiffs have not alleged that time, place or manner of each allegedly fraudulent act by Wiley."[8]  For the reasons discussed below, this argument fails.

---

[6]   Defendant's Memorandum at page 3.

[7]   Id. at page 2.

[8]   Id.

-8-

Plaintiffs respond to defendant Wiley's contention that plaintiffs failed to plead their fraud claim with sufficient particularity by referring to paragraphs 12 through 22 of the Complaint.[9]  The paragraphs referred to by plaintiffs aver the following:

> 12.  Between 1995 and 2009, Plaintiffs sold Wiley limited licenses to use copies of the Photographs in numerous educational publications.  The permissions granted [to] Wiley were expressly limited by number of copies, distribution area, language, duration, and media as set forth in Exhibit A.
>
> 13.  Plaintiffs granted the limited use licenses in response to Wiley's representations to Plaintiffs that the use of the Photographs would not exceed the limitations contained in Wiley's solicitations (*see*, for example, Exhibit C, which sets forth the identity of the persons making the misrepresentations, and the method by which the misrepresentations were communicated to Plaintiffs).[10]
>
> 14.  Upon information and belief, at the time Wiley represented to Plaintiffs that it needed specified, limited permission to use the Photographs, it knew its actual uses under the licenses would exceed the permission it was requesting and paying for.
>
> 15.  Upon information and belief, Wiley intended by its misrepresentations to obtain access to the Photographs at a lower cost than it would have

---

[9]     Plaintiffs' Response at page 5.

[10]     Exhibit C to plaintiffs' Complaint contains, among other things, five purchase orders sent by several different administrative and photo assistants at Wiley to Grant Heilman Photography in Lititz, Pennsylania.  Each of the purchase orders specifies a particular number of copies of photographs for which Wiley was seeking publication rights.  Plaintiffs' Complaint alleges that the number of copies, or uses, requested by Wiley in these purchase orders was intentionally deflated in order to obtain the publication rights at a lower cost to Wiley.

paid had it been honest in its dealings with
Plaintiffs, and to conceal the copyright
infringement that followed.  Wiley's false and
misleading representations deceived Plaintiffs,
and concealed the copyright infringement that
followed[.]

16.  Plaintiffs relied to their detriment on the
truthfulness of the express limitations contained
in Wiley's license solicitations in establishing
their license fees.

17.  Upon information and belief, Wiley exceeded
the permitted uses under the terms of the limited
licenses granted by Plaintiffs in the publications
identified in Exhibit A.

18.  Upon information and belief, Wiley used the
Photographs without any permission in the
publications listed in Exhibit B.

19.  When Wiley copied, distributed and used the
Photographs without authorization, Wiley had a
duty in equity and good conscience to disclose
those uses to Plaintiffs.  This is especially so
because Wiley knew precisely when its use of the
Photographs exceeded the applicable license
limitations, but Plaintiffs had no such knowledge
nor any reason to assume Wiley was being deceitful
in the uses it was making of the photographs.
Wiley never disclosed its unauthorized uses to
Plaintiffs or sought additional permissions to use
the Photographs.

20.  Wiley's fraud was effective and worked as
intended.  For years the infringement that
followed Wiley's fraud were concealed.  But for
Plaintiffs' fortuitous discovery of Wiley's
fraudulent acts, Wiley's infringement would still
be concealed, as Wiley intended.

21.  Upon information and belief, Wiley's practice
of requesting and paying for limited uses it knew
was going to exceed extends far beyond the
publications in Exhibit A.  This practice extends
to thousands of visual art licenses in hundreds of
its other publications.  While the lost licensing
fee from any particular license is relatively

small, millions of infringing textbooks have sold,
generating billions in revenue and profits.
Wiley's business model, built upon a foundation of
pervasive fraud, deprived Plaintiffs and thousands
of other visual art licensors their rightful
compensation and unjustly enriched Wiley with
outlandish profits in the process.

22.  Upon information and belief, John Doe
Printers 1-10 are the printers of the publications
in suit, and the printed copies in excess of the
licenses granted by Plaintiffs.  John Doe Printers
1-10 earned profits from such printings.[11]

The five purchase orders attached to plaintiffs'
Complaint as part of Exhibit C, read in the light most favorable
to plaintiffs, can reasonably be construed as representations by
defendant Wiley that (1) it would use the licensed photos only in
the quantities specified in the purchase orders, (2) it would not
print additional quantities of the licensed photographs without
plaintiffs' permission.[12]

These purchase orders are dated and signed and are
sufficient to place defendant on notice of the precise misconduct
with which it is charged by plaintiffs, see Frederico, supra --
namely, that purposefully deflated the number of copies and print
permissions requested by purchase orders submitted to Heilman
Photography for the purpose of obtaining those print permissions
at a lower cost.

---

[11]    Complaint at ¶¶ 12-22 (emphasis added); Exhibits A-C.

[12]    See Complaint, Exhibit C, at pages 2, 5-6, 9, 11, and 13.

-11-

Moreover, plaintiffs aver that the photographs for which limited licenses were obtained pursuant to those five purchase orders were printed in excess of quantities represented by Wiley.[13]  Therefore, I conclude that plaintiffs have sufficiently alleged "(1) a representation (2) which is material to the transaction at hand".  <u>Ira G. Steffy & Sons, Inc.</u>, <u>supra</u>; <u>see</u> <u>Bean v. Pearson Education, Inc.</u>, 2011 WL 1882367, at *5-8 (D.Ariz. May 17, 2011); <u>Wood v. Houghton Mifflin Harcourt Publishing Company</u>, 569 F.Supp.2d 1135, 1140-1141 (D.Colo. 2008).

Plaintiffs further aver that (1) "at the time Wiley represented to Plaintiffs that it needed specified, limited permission to use the Photographs, it knew its actual uses under the licenses would exceed the permission it was requesting and paying for", and (2) "Wiley intended by its misrepresentations to obtain access to the Photographs at a lower cost than it would have paid had it been honest in its dealings with Plaintiffs".[14]

Federal Rule of Civil Procedure 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally."  Moreover, the averments regarding defendant Wiley's knowledge and intent concerning its intended-printing representations are supported by plaintiffs' factual averments and exhibits.  Specifically, the averred fact that defendant

---

[13]   Complaint at  17; see Complaint, Exhibit A, at pages 29-31, 34-36.

[14]   Complaint at ¶¶ 14-15.

Wiley exceeded the printing limitations specified in the five attached purchase orders permits a reasonable inference that the printing limitations were intentionally deflated.[15]  Therefore, I further conclude that plaintiffs have sufficiently pled the third and fourth elements necessary to state a claim for fraudulent misrepresentation.

Finally, plaintiffs allege that they "relied to their detriment" and presumed "the truthfulness of the express limitations contained in Wiley's license solicitations in establishing their license fees".[16]  Plaintiffs' averments that their reliance was "detrimental" and that Wiley's allegedly fraudulent effort to obtain licenses at lower costs "worked as intended for years" supports a reasonable inference that plaintiffs reasonable reliance on defendant Wiley's intended-printing representations caused plaintiffs to receive less licensing revenue than they otherwise would have from defendant Wiley.[17]  Therefore, the averments in plaintiffs' Complaint, and their attached exhibits, have sufficiently plead the fifth and sixth elements of a fraudulent misrepresentation claim.  See Ira G. Steffy &, 7 A.3d at 290.

---

[15]    Complaint at ¶¶ 13-15, 17; Complaint, Exhibit A, at pages 29-31, 34-36; Complaint, Exhibit C, at pages 2, 5-6, 9, 11, and 13.

[16]    Complaint at ¶ 16.

[17]    See Complaint at ¶¶ 15-16, 20.

For the reasons stated above, plaintiffs Complaint sufficiently pleads a claim for fraudulent misrepresentation against defendant Wiley and I deny defendant Wiley's motion to dismiss Count II of the Complaint on that ground.

### Gist-of-the-Action Doctrine

Under Pennsylvania law, when a tort claim involves actions arising from a contractual relationship, the plaintiff is generally limited to an action under the contract.  Horizon Unlimited, Inc. v. Silva, 1998 U.S. Dist. LEXIS 2223, at *13-14 (E.D.Pa. February 26, 1998)(Shapiro, J.).  To maintain a tort action for alleged wrongs arising from a contractual relation-ship, "the wrong ascribed to defendant must be the gist of the action with the contract being collateral."  Id. (citing Bash v. Bell Telephone Co., 411 Pa.Super.347, 601 A.2d 825, 829 (Pa.Super.Ct. 1992)).  Here, the parties' relationship is based upon the licensing agreements by which defendant Wiley obtains limited permission to use plaintiffs' photographs.  In short, their relationship is contractual in nature

The gist-of-the-action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the

-14-

terms of the contract.  <u>Mirizio v. Joseph</u>, 4 A.3d 1073, 1080
(Pa.Super.Ct. 2010)(<u>citing</u> <u>eToll, Inc. v. Elias/Savion
Advertising, Inc.</u>, 811 A.2d 10, 14 (Pa.Super.Ct. 2002);
<u>McCloskey v. Novastar Mortgage, Inc.</u>, 2007 WL 320287, at *6
(E.D.Pa. Jan. 29, 2007)(Stengel, J.)(same)).

      If the complaint "essentially alleges a breach of
duties flowing from an agreement between the parties, the action
is contractual in nature."  <u>Titelman v. Rite Aid Corp.</u>,
2001 U.S.Dist. LEXIS 24049, at *18 (E.D.Pa. November 9, 2001)
(McLaughlin, J.)(internal citation omitted).

      Claims of fraud are barred by the gist-of-the-action
doctrine where the fraud relates to the performance of the
contract.  <u>Mirizio</u>, 4 A.3d at 1087 (<u>citing</u> <u>eToll, Inc.</u>, 811 A.2d
at 14); <u>Sullivan v. Chartwell Investment Partners, LP</u>, 873 A.2d
710, 719 (Pa.Super.Ct. 2005);  <u>Hart v. Arnold</u>, 884 A.2d 316, 341
(Pa.Super.Ct. 2005); <u>see</u> <u>AAMCO Transmissions, Inc. v. Wirth</u>, 2011
WL 6088671, at *7 (E.D.Pa. December 07, 2011) (Buckwalter, S.J.);
<u>Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP</u>, 2007
WL 403885, at *9 (E.D.Pa. January 31, 2007)(Stengel, J.).

      However, claims of fraud are not barred by the
gist-of-the-action doctrine where the fraud claim "stem[s] from

a fraudulent inducement to enter into a contract."  <u>Mirizio</u>,
4 A.3d at 1087 (quoting <u>Sullivan</u>, 873 A.2d at 719).[18]

Specifically, when a plaintiff alleges that a counter-
party to an agreement fraudulently agreed to perform obligations
under the agreement which the counter-party never intended to
perform in order to induce the plaintiff to enter the agreement,
the "misrepresentations relate to the inducement to contract" and
"are collateral to the performance of the contract[]".  There-
fore, such a claim of fraud in the inducement is not barred by
the gist-of-the-action doctrine.  <u>Sullivan</u>, 873 A.2d at 719

_____

[18]    The Supreme Court of Pennsylvania has not addressed the issue of
whether the gist-of-the-action doctrine bars claims alleging fraudulent
misrepresentations made in the inducement to enter a contract.  However, the
Superior Court of Pennsylvania has addressed the issue in several Opinions.

Shortly after the Superior Court of Pennsylvania issued its
decision in <u>eToll</u>, upon which the Superior Court relied in its subsequent
decisions in <u>Sullivan</u> and <u>Mirizio</u>, the United States Court of Appeals for the
Third Circuit "predict[ed] that the state supreme court would adopt the
doctrine as set out in the Superior Court's cases."  <u>Williams v. Hilton Group
PLC</u>, 93 Fed.Appx. 384, 385 (3d Cir. 2004).  Indeed, the Third Circuit Appeals
Court stated that "clarification of the [gist-of-the-action] doctrine for
precedential purposes must come from the state courts".  <u>Id.</u> at 387.

Although the Supreme Court of Pennsylvania has not addressed this
issue since the Third Circuit Appeals Court issued its decision in <u>Williams</u>,
the Superior Court of Pennsylvania has provided clarification of the gist-of-
the-action doctrine as it applies to situations, like this case, where an
allegedly fraudulent representation relates to the inducement to contract.  In
<u>Sullivan</u>, Superior Court of Pennsylvania held that because the plaintiff's
fraud claims "related to the inducement to contract", the fraud claims were
"collateral to the performance of the contracts and therefore, [were] not
barred by the gist-of-the-action doctrine."  873 A.2d at 719 (<u>citing</u> <u>eToll</u>,
811 A.2d at 17).

Most recently, the Superior Court stated that "[w]hile the gist of
the action doctrine may bar a tort claim arising from the performance of a
contract[,] it does not 'bar fraud stemming from the fraudulent inducement to
enter into a contract.'"  <u>Mirizio</u>, 4 A.3d at 1085 (<u>quoting</u> Sullivan, 873 A.2d
at 719 (<u>citing</u> <u>eToll</u>, 811 A.2d at 17)).

(<u>citing</u> <u>eToll</u>, 811 A.2d at 17); <u>see</u> <u>Mirizio</u>, 4 A.3d at 1087; <u>eToll, Inc.</u>, 811 A.2d at 14.

Here, plaintiffs allege that Wiley intentionally misrepresented the number of permissions that it needed and requested permission to print a smaller number of plaintiffs' photographs than Wiley presently, actually intended to print, which, in turn, induced plaintiffs to set licensing fees that allowed Wiley to obtain use of plaintiffs' photographs at lower costs. Thus, the essence of plaintiffs' allegation is fraud in the inducement of the licensing agreements and not fraud in Wiley's performance of its duties under the licensing agreements. <u>See</u> <u>Degginger v. Houghton Mifflin Harcourt Publishing Company</u>, 2010 WL 3491358, at *1 (E.D.Pa. September 2, 2010)(Fullam, S.J.)(<u>citing</u> <u>Mirizio</u>, <u>supra</u>; <u>Sullivan</u>, <u>supra</u>).

For the reasons stated above, I conclude that Count II of the Complaint is not barred by Pennsylvania's gist-of-the-action doctrine and deny defendant Wiley's motion for partial dismissal on that ground.

<u>CONCLUSION</u>

Defendant Wiley's motion for partial dismissal seeks to dismiss Count II of plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 9(b), as well as Pennsylvania's gist-of-the-action doctrine. For the reasons expressed above, I conclude that (1) plaintiffs' Complaint and attached exhibits satisfy the

requirements of Federal Rule of Civil Procedure 9(b) with respect to plaintiffs' common-law fraud claim against defendant Wiley asserted in Count II, and (2) that gist of plaintiffs' fraud claim asserted in Count II is fraud in the inducement of the agreements by which defendant Wiley licensed limited use of plaintiffs' photographs in defendant Wiley's textbooks. Therefore, I deny defendant Wiley's motion to dismiss Count II of the Complaint.