IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRANT HEILMAN PHOTOGRAPHY, INC. )
and                             )
GRANT HEILMAN,                  )
                                )   Civil Action
          Plaintiffs            )   No. 11-cv-01665
     vs.                        )
                                )
JOHN WILEY & SONS, INC. and     )
JOHN DOE PRINTERS 1-10,         )
                                )
          Defendants            )

                              *    *    *

APPEARANCES:

     MAURICE HARMON, ESQUIRE, and
     AUTUMN WITT BOYD, ESQUIRE
          On behalf of Plaintiffs

     ASHIMA AGGARWAL, ESQUIRE
     JOSEPH J. BARKER, ESQUIRE, and
     DEBORAH H. SIMON, ESQUIRE
          On behalf of Defendant
          John Wiley & Sons, Inc.

                         *    *    *

                    **O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on Plaintiffs' Motion

for Preliminary Injunction to Stop Defendant John Wiley & Sons,

Inc. from Continuing to Infringe Copyrights, filed March 8, 2011

("Motion for Preliminary Injunction").[1]  For the following

reasons, I deny plaintiffs' Motion for Preliminary Injunction.

---

[1]     Defendant John Wiley & Sons, Inc. filed Defendant's Opposition to
Plaintiffs' Motion for a Preliminary Injunction on April 11, 2011.
Plaintiffs' Reply on Motion for Preliminary Injunction to Stop Defendant John
Wiley & Sons, Inc. From Continuing to Infringe Copyrights was filed on April
25, 2011.

**JURISDICTION**

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

**VENUE**

Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), and pursuant to 28 U.S.C. § 1400(a).

**BACKGROUND**

According to the averments in plaintiffs' Complaint, and testimony presented at an injunction hearing, held before me on May 16, 17, 20, 31, and June 1, 2011, plaintiff Grant Heilman Photography, Inc. ("Heilman Photography") is a stock photography agency which licences photographs on behalf of a number of photographers, including plaintiff Grant Heilman, a well-known professional photographer.  Heilman Photography maintains its principle place of business in Lititz, Pennsylvania.

Acting on behalf of the photographers it represents, Heilman Photgraphy, in return for a fee, issues limited licenses to publishers to permit the reproduction of its photographs in their publications.  In turn, Heilman Photography compensates the photographers for the use of the photographs with a fee, royalty, or other payment in accordance with the agreement between Heilman Photography and the photographers whose photographs are being published.

Defendant John Wiley and Sons, Inc. ("Wiley") is a publisher of mainly college-level educational textbooks, with its primary office in Hoboken, New Jersey.  Wiley sells and distributes textbooks in Pennsylvania, throughout the United States, and in other countries.

## COMPLAINT

On March 8, 2011, plaintiffs filed a three-count Complaint, which includes a demand for jury trial.  Specifically, Count I is a claim for copyright infringement against defendant Wiley, in violation of 17 U.S.C. § 501.  Count II is a claim for common-law fraud against defendant Wiley.  Count III is a claim for copyright infringement against defendant John Doe Printers 1-10, in violation of 17 U.S.C. § 501.  Plaintiffs allege that the identity of these printers is known to defendant, but unknown to plaintiffs.

Plaintiffs' prayer for relief seeks a preliminary and permanent injunction against defendants and anyone acting in concert with them from copying, displaying, distributing, selling or offering to sell plaintiffs' photographs, some described in the Complaint and others not included in this suit.  Injunctive relief is authorized by 17 U.S.C. § 502.

Plaintiffs also seek impoundment of all copies of photographs used in violation of their copyrights as well as all

related records, and destruction or other reasonable disposition of the photos upon final judgment, pursuant to 17 U.S.C. § 503.

Plaintiffs additionally seek actual damages and all profits derived from unauthorized use of their photographs, or statutory damages if they so elect.  Finally, plaintiffs seek reasonable attorney's fees, costs, punitive damages against defendant Wiley, and other relief as the court deems proper.

Plaintiffs' request for a preliminary injunction arises out of defendants' alleged infringement of certain of plaintiffs' copyrighted photographs.  Specifically, plaintiffs allege that they are the owners and exclusive copyright holders of certain photographs.  Plaintiffs allege that between 1995 and 2009 they sold defendant Wiley limited licenses to use the photographs in numerous educational publications.  The licenses were limited by number of copies, distribution area, language, duration, and media.

Plaintiffs aver that defendant Wiley exceeded the permitted uses under the terms of the limited licenses in certain identified publications.  Plaintiffs further assert that defendant Wiley used other identified photographs without *any* permission.

Plaintiffs also allege that when requesting to use the photos, defendant Wiley represented that it needed only limited permission, knowing that Wiley's actual use would exceed the

permission it was requesting and paying for.  Plaintiffs allege
that Wiley made these misrepresentations to obtain the photo-
graphs at a lower cost, and that plaintiffs relied to their
detriment on the misrepresentations when establishing their
licensing fees.

## PROCEDURAL HISTORY

On March 8, 2011, plaintiffs also filed the within
Motion for Preliminary Injunction.[2]  Plaintiffs seek a prelim-
inary injunction prohibiting future unlicensed printing of
plaintiffs' copyrighted photographic images.  Plaintiffs do not
seek an order mandating retrieval of textbooks which have already
been distributed to schools or prohibiting the sale of any
textbooks which have already been printed.[3]

On April 11, 2011, Wiley filed Defendants' Opposition
to Plaintiffs' Motion for a Preliminary Injunction.

A hearing on plaintiffs' was held over the course of
five days -- May 16, 17, 20, 31, and June 1, 2011.[4]

---

[2]      See Plaintiffs' Motion for Preliminary Injunction to Stop
Defendant John Wiley & Sons, Inc. from Continuing to Infringe Copyrights at
page 1.

[3]      On June 1, 2011, the final day of the preliminary injunction
hearing, Plaintiffs' Amended Proposed Findings of Fact and Conclusions of Law
was filed (Document 61).  The proposed Order submitted with this amended
filing specifies the relief sought by plaintiffs through their motion and the
hearing.

[4]      The first day of the preliminary injunction hearing was spent
hearing argument regarding a motion filed by Wiley which sought to quash
plaintiffs' preliminary injunction hearing subpoenas.  Testimony concerning
plaintiffs' motion for preliminary injunction began on the second day of the

(Footnote 5 continued:)

- 5 -

**FINDINGS OF FACT**

Based upon the pleadings, record papers, affidavits, depositions, exhibits, stipulations of counsel and the evidence presented at the hearing held May 16, 17, 20, 31, and June 1, 2011, the pertinent facts are as follows.

Between 1995 and 2009, Heilman Photography regularly granted licenses to Wiley for the use of Grant Heilman's photographs in Wiley's textbooks in exchange for a licensing fee paid by Wiley. These licenses expressly limited the number of reproductions permitted, the geographic distribution area, the language in which the book was printed, the duration of the license, and additional media in which the image could be displayed.

**Printings in Excess of Licensed Quantities**

Invoices sent to Wiley by Heilman Photography contained the license limitations for the images included in the invoice. Plaintiffs introduced numerous invoices into evidence during the preliminary injunction hearing.[5] Plaintiffs also introduced

---

(Continuation of footnote 5:)

hearing. See Transcript of Oral Argument, May 16, 2011 ("Tr. Day 1");
Transcript of Preliminary Injunction Hearing, May 17, 2011 ("Tr. Day 2");
Transcript of Preliminary Injunction Hearing, May 20, 2011 ("Tr. Day 3");
Transcript of Preliminary Injunction Hearing, May 31, 2011 ("Tr. Day 4"); and
Transcript of Preliminary Injunction Hearing, June 1, 2011 ("Tr. Day 5").

[5]     See Plaintiffs' Hearing Exhibits 6-8, 10-12, 14-16, 18-19, 21, 23, 25, 27, 29, 31, 33, 35, and 37.

- 6 -

purchase orders for textbooks published by Wiley and subject to Heilman Photography's licenses.[6]

Specifically, Heilman Photography granted Wiley license to use a number of Grant Heilman's photographs in the hardcover student edition of Botkin, Environmental Science, 3E. The invoice contained a print run limitation of 20,000, meaning that Wiley would need additional license to print more than 20,000 units of that textbook. The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 37,000 units of Botkin, Environmental Science, 3E.[7]

Heilman Photography granted Wiley license to use a Grant Heilman photograph in the hardcover student edition of deBlij, Regions, 9E. The invoice contained a print run limitation of under 20,000, meaning that Wiley would need additional license to print 20,000 or more units of that textbook. The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 60,000 units of deBlij, Regions, 9E.[8]

Heilman Photography granted Wiley license to use a number of Grant Heilman's photographs in the hardcover student edition of Skinner, Dynamic Earth, 4E. The invoice contained a

---

[6]    See Plaintiffs' Hearing Exhibits 9, 13, 20, 22, 24, 26, 28, 34, 36, and 38.

[7]    See Plaintiffs' Hearing Exhibits 8-9.

[8]    See Plaintiffs' Hearing Exhibits 13-14.

print run limitation of under 20,000, meaning that Wiley would need additional license to print 20,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 30,000 units of Skinner, Dynamic Earth, 4E.[9]

Heilman Photography granted Wiley license to use a number of Grant Heilman's photographs in the hardcover student edition of Snustad, Principles of Genetics, 2E.  The invoice contained a print run limitation of under 20,000, meaning that Wiley would need additional license to print 20,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 37,500 units of Snustad, Principles of Genetics, 2E.[10]

Heilman Photography granted Wiley license to use a Grant Heilman's photograph in the hardcover student edition of Snyder, Chemistry, 3E.  The invoice contained a print run limitation of under 20,000, meaning that Wiley would need additional license to print 20,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 23,000 units of Snyder, Chemistry, 3E.[11]

---

[9]   See Plaintiffs' Hearing Exhibits 19-20.

[10]   See Plaintiffs' Hearing Exhibits 21-22.

[11]   See Plaintiffs' Hearing Exhibits 23-24.

Heilman Photography granted Wiley license to use a Grant Heilman photograph in the hardcover student edition of Solomons, Organic Chemistry, 7E.  The invoice contained a print run limitation of under 40,000, meaning that Wiley would need additional license to print 40,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 55,000 units of Solomons, Organic Chemistry, 7E.[12]

Heilman Photography granted Wiley license to use a number of Grant Heilman's photographs in the hardcover student edition of Solomons, Organic Chemistry, 8E.  The invoice contained a print run limitation of under 40,000, meaning that Wiley would need additional license to print 40,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 62,500 units of Solomons, Organic Chemistry, 8E.[13]

Heilman Photography granted Wiley license to use a Grant Heilman photograph in the hardcover student edition of Trefil, The Sciences, 2E.  The invoice contained a print run limitation of under 20,000, meaning that Wiley would need additional license to print 20,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence

---

[12]     See Plaintiffs' Hearing Exhibits 25-26.

[13]     See Plaintiffs' Hearing Exhibits 27-28.

- 9 -

show that Wiley ordered the printing of at least 28,500 units of Snustad, Principles of Genetics, 2E.[14]

Heilman Photography granted Wiley license to use a Grant Heilman photograph in the hardcover student edition of Trefil, The Sciences-Updated, 2E.  The invoice licensed the photo for a printing of 15,000 units of the textbook, meaning that Wiley would need additional license to print more than 15,000 units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 34,500 units of Snustad, Principles of Genetics-Updated, 2E.[15]

Heilman Photography granted Wiley license to use a Grant Heilman photograph in the hardcover student edition of Voet, Biochemistry, 3E.  The invoice contained a print run limitation of under 40,000, meaning that Wiley would need additional license to print 40,000 or more units of that textbook.  The Wiley purchase orders introduced into evidence show that Wiley ordered the printing of at least 42,500 units of Voet, Biochemistry, 2E.[16]

---

[14]   See Plaintiffs' Hearing Exhibits 33-34.  Moreover, plaintiffs produced a softcover edition of Trefil, The Sciences, 2E, during the preliminary injunction hearing which contained plaintiffs' images.  Sonia Wasco, CEO of Heilman Photography, testified that the license granted to Wiley for use of plaintiffs' images was limited to the hardcover student edition of Trefil, The Sciences, 2E.  See Tr. Day 3, at page 24, line 7, through page 26, line 18.

[15]   See Plaintiffs' Hearing Exhibits 35-36.

[16]   See Plaintiffs' Hearing Exhibits 37-38.

The Heilman Photography invoices and the Wiley purchase orders entered into evidence at the preliminary injunction hearing demonstrate that Wiley printed units in excess of the licensed quantity for of at least ten different textbooks containing plaintiffs' photographs.

## **Geographic Limitations Exceeded**

Wiley distributed the textbook Black, Microbiology, 6E, from its distribution center in Australia despite the limitation in the license granted by Heilman Photography which only permitted distribution in North America.

Specifically, Heilman Photography granted Wiley "one-time non-exclusive North American English language reproduction rights" for eleven of plaintiffs' images "for one-time, editorial reuse inside the sixth edition of the John Wiley & Sons, Inc student textbook 'Microbiology' by Black, ISBN # 0-471-428084-0".[17]  A spreadsheet produced by Wiley indicates that Wiley distributed Black, Microbiology 6E from its distribution center in Australia, as well as the United States and Canada.[18]

Additionally, Wiley utilized plaintiffs' photos in a softcover, international edition of Strahler, Introducing

---

[17]     Plaintiffs' Hearing Exhibit 7; see Tr. Day 3, at page 10, line 5 through page 11, line 4, and page 48, lines 4 through 22.

[18]     See Plaintiffs' Hearing Exhibit 39, at WGHPI 0000953.  The spreadsheet provided by Wiley indicates that "Black Microbiology" with the "ISBN" number of "0471420840" had a "Geographic Dist" from the "USDC/CDC/ADC" (meaning United States Distribution Center/Canadian Distribution Center/Australian Distribution Center).

Physical Geography, 3E, even though Wiley had only obtained a license to use plaintiffs' photos in the hardcover edition for North American distribution.

Specifically, Heilman Photography granted Wiley a license for the use of a number of Grant Heilman photographs in the textbook Strahler, Introducing Physical Geography, 3E.[19] Heilman Photography's invoice granted "one-time non-exclusive North American English language reproduction rights" for images of a navel orange grove, a ginko tree, and a view from Klingman's Dome "inside one edition of the hardcover student edition" of Strahler, Introducing Phsysical Geography, 3E.  The invoice licensed use of the photos for printing of 15,200 units.[20]

Plaintiffs introduced a softcover, international edition[21] of Strahler, Introducing Physical Geography, 3E during the preliminary injunction hearing.[22]  Sonia Wasco, CEO of Heilman Photography, testified that plaintiffs' photos of an orange grove, a ginkgo tree, and a view from Klingman's Dome were used in the softcover, international edition, but that Heilman

---

[19]    Plaintiffs' Hearing Exhibit 29.

[20]    Plaintiffs' Hearing Exhibit 29.  The invoice also licensed the use of two other photos for 15,200 units of the CD-Rom version of Strahler, Introducing Physical Geography, 3E.  Id.

[21]    Plaintiffs' Hearing Exhibit 45.

[22]    The cover of Plaintiffs' Hearing Exhibit 45 indicates that it is a "restricted" international edition of Strahler, Introducing Physical Geography, 3D, which is "not for sale in North America".

Photography never granted Wiley permission to use those images in a softcover, international edition of that textbook.[23]

### **Wiley's Policy Regarding New Printings**

Wiley did not reprint any of the textbooks at issue in this litigation during the month prior to the preliminary injunction hearing.[24]

Additionally, a policy has been adopted at Wiley under which textbooks, including those textbooks at issue in this suit, will not be reprinted unless the applicable licenses have been checked to confirm that the uses of all images in the textbook are permitted by the applicable license.[25]  In accordance with this policy, a textbook at issue in this litigation would not be reprinted unless proper permission were obtained or the unpermissioned image were removed and replaced with another permissioned image.[26]

As late as a few weeks prior to the preliminary injunction hearing, a group of Wiley employees was formed and is

---

[23]    See Tr. Day 2, at page 42, line 4 through page 54, line 4.  During closing argument at the preliminary injunction hearing, Wiley's counsel acknowledged that plaintiffs had demonstrated a likelihood of success on the merits of their infringement claims related to "the two Strahler textbooks" at issue in this litigation -- namely, Strahler, Introducing Physical Geography, 3E, and Strahler, Physical Geography, 2E.  Tr. Day 5, at page 57, lines 10-24.

[24]    See Tr. Day 4, at page 43, lines 10-15.

[25]    See Tr. Day 4, at page 34, lines 2-16; page 89, line 22 through page 90, line 10; and page 92, lines 2-10.

[26]    See Tr. Day 4, at page 43, lines 13-19.

working to prevent future printing of textbooks containing
unlicensed photographic images and to address instances where
Wiley ordered printings in violation of the licenses it had
obtained or without any license.  The first priority of this
working group is to ensure clear licensing permissions for
upcoming printings.  The group will the address the issue of
identifying and remedying situations where unlicenced or
unpermissioned printing has already occurred.  Written procedures
for clearing photo permission for future printings have been
drafted and are being finalized for use by Wiley employees.[27]

        After the initiation of this copyright infringement
action, Ms. Lisa Suarez, a senior inventory manager at Wiley,
whose responsibilities include ordering printings and re-
printings of Wiley's textbooks and who is a member of the working
group discussed above, received instructions that none of the
textbooks involved in this litigation should be reprinted.[28]

### <u>STANDARD OF REVIEW</u>

        Injunctive relief for copyright infringement is
authorized by 17 U.S.C. § 502(a), which provides that the court
may "grant temporary and final injunctions on such terms as it
may deem reasonable to prevent or restrain infringement of a
copyright."

---

[27]     <u>See</u> Tr. Day 4, at page 70, line 3, through page 77, line 13.

[28]     <u>See</u> Tr. Day 4, at page 25, lines 10-11.

A preliminary injunction is an extraordinary remedy that should be granted only if:

(1)   the plaintiff is likely to succeed on the merits;

(2)   denial will result in irreparable harm to the plaintiff;

(3)   granting the injunction will not result in irreparable harm to the defendant; and

(4)   granting the injunction is in the public interest.

Nutrasweet Company v. Vit-Mar Enterprises, 176 F.3d 151, 153 (3d Cir. 1999).  A plaintiff's failure to establish any of these four elements in its favor renders a preliminary injunction inappropriate.  Id.

### Success on the Merits

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) the infringer's unauthorized copying of constituent elements of the work that are original.  Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358, 379 (1991).

The owner of copyright has the exclusive right to copy or authorize copying of the protected works.  See 17 U.S.C. § 106.  Anyone who violates any of the exclusive rights of the copyright owner is an infringer of the copyright.  17 U.S.C. § 501.  As pertinent here, the owner of a copyright has the exclusive right to do or authorize the following: to reproduce

- 15 -

the copyrighted work in copies or phonorecords, and to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  17 U.S.C. §§ 106(1), (3).

When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement. LGS Architects, Inc. v. Concordia Homes of Nevada, 434 F.3d 1150, 1156 (9th Cir. 2006).

### Irreparable Harm to Plaintiffs

Generally, "a purely economic injury, compensable in money," does not satisfy the irreparable injury requirement. Minard Run Oil Company v. U.S. Forest Service, 670 F.3d 236, 255, 2011 WL 4389220, at *13 (3d Cir. 2011).  Rather, the irreparable harm requirement is met if a plaintiff demonstrates a potential harm which cannot be redressed by a legal or an equitable remedy following a trial.  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

Grounds for irreparable injury include "loss of control of reputation, loss of trade, and loss of good will." Kos Pharmmarceuticals, Inc. v. Andrx Corporation, 369 F.3d 700, 726 (3d Cir.2004)(internal quotation marks omitted).

Moreover, establishing the risk of irreparable harm is not enough to support a preliminary injunction.  A plaintiff has the burden of proving a "clear showing of immediate irreparable

- 16 -

injury." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)(quoting Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980)).  The "requisite feared injury or harm must be irreparable -- not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." Id. (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Money damages for infringement, rather than injunctive relief, are appropriate where they are capable of calculation by the court.  See Abend v. MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988).

An injunction will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.  Nor will an injunction be issued "to restrain one from doing what he is not attempting and does not intend to do." Continental Group, 614 F.2d at 359  (quoting Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267-68 (E.D.La. 1967)).

### Irreparable Harm Not Presumed

Prior decisions of the United States Court of Appeals for the Third Circuit established the precedent that a showing of a prima facie case of copyright infringement, or reasonable likelihood of success on the merits, raised a rebuttable pre-sumption of irreparable harm.  See Educational Testing Services v. Katzman, 793 F.2d 533, 543-544 (3d Cir. 1986) (citing Apple Computer, infra).  Under the Third Circuit's historical

precedent, a plaintiff who makes out a prima facie case of copy-right infringement was entitled to a preliminary injunction without a detailed showing of irreparable harm.  Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254 (3d Cir. 1983).[29]

The precedent establishing a rebuttable presumption of irreparable harm upon a showing of a plaintiff's likelihood of success on the merits has been abrogated by the Opinion of the United States Supreme Court in eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S.Ct. 1837, 1840, 164 L.Ed.2d 641, 646 (2006).

In eBay, the Court made clear that a permanent injunction does not _automatically_ follow a determination that infringement has occurred.[30]  See id.  Moreover, the Court stated that it has "consistently rejected invitations to replace traditional equitable considerations with a rule that an

_____

[29]    The Third Circuit further stated:
The public interest underlying the copyright law requires a presumption of irreparable harm, as long as there is...adequate evidence of the expenditure of significant time, effort and money directed to the production of the copyrighted material.  Other-wise, the rationale for protecting copyright, that of encouraging creativity, would be undermined.

Apple Computer, 714 F.2d at 1255.

[30]    Although the eBay decision addressed the standard for issuing a permanent injunction, the United States Supreme Court has stated that the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.  See, e.g., University of Texas v. Camenisch, 451 U.S. 390, 392, 101 S.Ct. 1830, 1832, 68 L.Ed.2d 175 (1981).

injunction automatically follows a determination that a copyright has been infringed."  eBay, 547 U.S. at 392-393, 126 S.Ct. at 1840, 164 L. Ed. 2d at 646.

The Third Circuit has not yet addressed the issue of whether the Supreme Court's eBay ruling abrogated the rebuttable presumption articulated by the Third Circuit in Katzman.

However, when confronted by the issue of whether a rebuttable presumption of irreparable harm is permissible post-eBay, both the United States Court of Appeals for the Second Circuit and courts in this district have found that a rebuttable presumption of irreparable harm is prohibited by eBay, and that a party seeking an injunction must demonstrate that irreparable harm is likely if the injunction is not granted.  See Salinger v. Colting, 607 F.3d 68, 74-75 (2d Cir. 2010); Precision Medical, Inc. v. Genstar Technologies Co., 2011 WL 1674354, at *10-14 (E.D.Pa. May 3, 2011) (Schiller, J.); see also Hodinka v. Delaware County, 759 F.Supp.2d 603, 611 n.4 (E.D.Pa. 2011) (DuBois, S.J.).

In light of the Opinion of the United States Supreme Court in eBay, as well as authority from the Second Circuit and this district, I will not apply a rebuttable pre-sumption of irreparable harm to plaintiffs based upon plain-tiffs' showing of a likelihood of success on the merits of its infringement claim.

A plaintiff seeking preliminary injunctive relief must demonstrate that irreparable injury is likely in the absence of an injunction.  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 375-376, 172 L.Ed.2d 249, 262 (2008).  Absent a showing by plaintiffs of the likelihood of irreparable injury, no preliminary injunction may issue, even if the other three requirements are satisfied.  See Nutrasweet, 176 F.3d at 153.

### Irreparable Harm to Defendant

The United States Court of Appeals for the Third Circuit has rejected the argument that a preliminary injunction may not issue simply because it would have a "devastating effect" on a defendant's business, explaining that "[i]f that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone."  Apple Computer, 714 F.2d at 1255.

However, the Supreme Court has held that the extraordinary relief of a preliminary injunction is particularly inappropriate where "the proportion [of allegedly infringed material] is so insignificant compared with the injury from stopping...use of [an] enormous volume of independently acquired information."  Dun v. Lumbermen's Credit Association, 209 U.S. 20, 23, 28 S.Ct. 335, 337, 52 L.Ed. 663 (1908).

## Public Interest

With respect to the final prong of the section 502(a) analysis, the Third Circuit has stated:

> Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.

Apple Computer, 714 F.2d at 1255 (internal quotation omitted).

In discussing the public interest implicated in the context of patent infringement, the Third Circuit has stated that "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.  Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors."  American Telephone and Telegraph Co. v. Winback, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994); see eBay, supra.

## DISCUSSION

### Likelihood of Success on Merits

Plaintiffs contend that they are reasonably likely to succeed on the merits of their copyright infringement claim against Wiley both because they own the copyrights to all of the

photographs in suit,[31] and Wiley violated plaintiffs' copy-rights

by either exceeding the scope of the license granted

to Wiley or by printing plaintiffs' copyrighted images without

any license at all.[32]

Wiley does not address plaintiffs' likelihood of

success on the merits in its opposition to plaintiffs' Motion for

Preliminary Injunction.[33]  Moreover, on the final day of the

preliminary injunction hearing, Ashima Aggarwal, Esquire, counsel

for Wiley, acknowledged that plaintiffs had established that

Wiley used plaintiffs' copyrighted images in two textbooks

without license to do so.[34]

Moreover, the evidence introduced at the preliminary

injunction hearing demonstrated that Wiley used plaintiffs'

photographs beyond the scope of the licenses granted by Heilman

Photography for those photographs.  Specifically, Wiley printed

units in excess of quantitative limitations in certain licenses

---

[31]   The photographs in suit are attached to plaintiffs' Complaint as Exhibit A (scope of license allegedly exceeded) and Exhibit B (allegedly printed without any license at all).

[32]   Plaintiffs' Motion for Preliminary Injunction at pages 4-6.

[33]   See Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction at pages 4-14.

[34]   See Tr. Day 5, at page 57, lines 13-24.  Plaintiffs' Exhibit 3 is a spreadsheet identifying textbooks published by Wiley that plaintiffs contend infringe their copyrights.  Maurice Harmon, Esquire, counsel for plaintiffs, described Plaintiffs' Exhibit 3 as an "exhibit summary".  See Tr. Day 5, at page 11, line 16.  Two textbooks authored by Strahler are included on the spreadsheet: (1) "Strahler, Physical Geography: Science and Systems 2E"; and (2) "Strahler, Introducing Physical Geography 3E".

and distributed certain textbooks in the suit beyond the geographic limitation in certain licenses.

When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement. LGS Architects, supra.  Here, given the evidence demonstrating that Wiley exceeded the scope of certain licenses granted by Heilman Photography, I find that plaintiffs are reasonably likely to succeed on the merits of their copyright infringement claim against Wiley.

### Irreparable Harm to Plaintiffs

In order for a preliminary injunction to issue, plaintiffs must make a clear showing that without the preliminary injunction sought, plaintiffs will suffer injury or harm that is both immediate and irreparable.  See ECRI, supra.  Because plaintiffs have not made a clear showing that they will suffer immediate, irreparable injury if their requested preliminary injunction is denied, I deny plaintiffs' Motion for Preliminary Injunction.  See NutraSweet, supra.

### *No Immediate Harm*

Plaintiffs seek an order requiring that Wiley refrain from any further printing of textbooks containing plaintiffs' unlicensed images.  Plaintiffs do not seek to retrieve infringing publications that have already been distributed to schools.

During the preliminary injunction hearing, plaintiffs' counsel, Maurice Harmon, Esquire, confirmed that plaintiffs do not seek to enjoin Wiley from selling textbooks which have already been printed and which contain infringing images. Rather, Attorney Harmon specified that plaintiffs are seeking money damages for already-printed textbooks which contain infringing images. Plaintiffs are not seeking, now or at trial, to have already-printed textbooks containing infringing images destroyed.

According to Attorney Harmon and Heilman Photography's Chief Executive Officer, Ms. Wasco, the only preliminary relief sought by plaintiffs is an order enjoining Wiley from any further printing of textbooks containing images which infringe plaintiffs' copyrights.[35]

The specific preliminary injunctive relief plaintiffs seek is particularly relevant in light of the testimony of Ms. Lisa Suarez, a senior inventory manager in Wiley's higher education division. Ms. Suarez testified that, as a Senior Inventory Manager, she manages the printings and re-printings of textbooks published by Wiley.[36]

---

[35]   See Tr. Day 3, at page 83, line 1 through page 86, line 3; Tr. Day 4, at page 60, lines 14-20.

[36]   Specifically, Ms. Suarez testified on direct examination by plaintiffs' counsel that, in her capacity with Wiley, she (1) reviews what inventory, if any, Wiley has for a particular title; (2) predicts or assumes or estimates the quantity of units or additional units Wiley will need to satisfy orders that come in during a given season; and (3) issues requests for printings or reprinting based upon her review and estimates. See Tr. Day 4,

Ms. Suarez further testified that in her capacity as a senior inventory manager, she received instructions not to order or approve printings for any of the textbooks involved in this action.[37]  Ms. Suarez testified that a business decision was made that Wiley would not reprint any books containing unlicensed images and that reprinting would only be ordered after compliance with the applicable licenses was confirmed.[38]

Ms. Saurez confirmed, upon cross-examination, that Wiley had not reprinted any of the textbooks involved in this litigation within the month preceding the preliminary injunction hearing.  Moreover, she confirmed that Wiley had no plans to reprint any of the textbooks in this litigation.[39]

During her testimony at the preliminary injunction hearing, Kaye Pace confirmed Wiley's decision and policy against printing any new textbooks unless the licenses for the images in those books have been confirmed and proper permission exists for use of the image in the new printing.

Ms. Pace is a publisher at Wiley and is responsible for supervising the group of editors responsible for Wiley's biology,

---

at page 22, line 25 through page 24, line 24.

[37]   See Tr. Day 4, at page 25, lines 2-11.

[38]   See Tr. Day 4, at page 32, line 25 through page 34, line 23.

[39]   See Tr. Day 4, at page 43, lines 10-15.

chemistry, and physics textbooks.[40]  Attorney Harmon, counsel for
plaintiffs, stated: "in terms of new printings -- not printed
books already in inventory, but new printings -- Wiley's not
going to do that anyway without getting all the permissions for
the photographs, correct?"  Ms. Pace responded, "[T]hat is our
policy."[41]

An injunction will not be issued merely to allay the
fears and apprehensions or to soothe the anxieties of the
parties.  Nor will an injunction be issued "to restrain one from
doing what he is not attempting and does not intend to do."
Continental Group, 614 F.2d at 359  (quoting Standard Brands,
Inc. v. Zumpe, 264 F. Supp. 254, 267-68 (E.D.La. 1967)).

I found the testimony of both Ms. Suarez and Ms. Pace
to be credible.  Because of the testimony that Wiley is no longer
printing the textbooks involved in this litigation and that new
printings are being reviewed to ensure that proper permission
exists for all images therein, I find that plaintiffs fail to
show that they are likely to suffer immediate harm if their
requested preliminary injunction is denied.

### Harm Compensable by Money Damages

Defendant Wiley opposes plaintiffs' requested
preliminary injunction on the grounds that plaintiffs fail to

---

[40]     See Tr. Day 4, at page 65, lines 6-25.

[41]     See Tr. Day 4, at page 92, lines 2-7; see also Tr. Day 4, at
page 113, line 10 through page 114, line 14.

show immediate, irreparable harm.  Wiley argues in opposition to plaintiffs' motion, that money damages will be sufficient to compensate plaintiffs for any copyright infringement proven at trial.[42]

Economic injury which is compensable in money damages does not satisfy the irreparable injury requirement.  <u>Minard Run Oil</u>, 670 F.3d at 255.  Rather, the harm must be "of a peculiar nature, so that compensation in money cannot atone for it." <u>ECRI</u>, 809 F.2d at 226 (<u>quoting</u> <u>Glasco</u>, 558 F.2d at 181).

The cross-examination testimony of Sonia Wasco, CEO of Grant Heilman Photography, Inc., supports Wiley's contention that money damages will be sufficient to compensate plaintiffs for any copyright infringement by Wiley which is proven at trial.[43]

Specifically, Ms. Wasco testified that in past instances where Wiley exceeded the scope of a license granted by Heilman Photography, Heilman Photography had, in exchange for an additional fee, granted a retroactive license to cover the otherwise-unlicensed use.[44]

Moreover, Ms. Wasco testified that, in previous unrelated copyright infringement suits brought by photographers,

---

[42]   <u>See</u> Tr. Day 5, page 49, line 20, through page 51, line 4; <u>see</u> <u>also</u> Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction at pages 5-10.

[43]   <u>See</u> Tr. Day 3, page 53, line 1 through page 86, line 11.

[44]   <u>See</u> Tr. Day 3, page 62, lines 23-25; Defendant's Exhibits 1 and 2.

she has been retained and testified as an expert witness
concerning how monetary damages should be calculated when a
publisher exceeds the type of photographic license restrictions
at issue here.[45]  Ms. Wasco's acknowledgment of her own prior
expert testimony suggests, especially where a licence has been
granted but its limits exceeded, that money damages can be
adequately calculated.[46]

      Moreover, on re-cross-examination, Ms. Wasco
acknowledged that if all of the information concerning the
unlicensed use of a particular copyrighted image were available,
then the proper fee for that use could be determined based on
Heilman Photography's licensing fee framework.[47]

---

[45]    See Tr. Day 3, page 74, lines 3-21.  The following exchange
occurred between Attorney Aggarwal and Ms. Wasco.

    Q:   Now you've served as an expert witness on behalf of photographers
         in these types of cases?

    A:   Yes, I have.

    ...

    Q:   Now, your testimony as an expert concerned how monetary damages
         should be calculated where a company had exceed the types of
         restrictions that are included in these photo licenses; correct?

    A:   Correct.  In some of the cases, yes, that's correct.

[46]    See id.; see also

[47]         Q:   My question is, if Wiley disclosed all of its uses of your
                 photographs...which includes the numbers of copies printed,
                 where they were distributed, all the formats in which they
                 were used, all the languages in which the books were
                 printed, could you then calculate a license fee to reflect
                 those uses?

             A:   Yes.

Tr. Day 3, at page 108, lines 1-8.

Finally, Ms. Wasco identified Defendant's Exhibit 3 as the copyright notice which appears on Heilman Photography's website.  Ms. Wasco testified that visitors to Heilman Photography's website must agree to the terms of the notice prior to being allowed to view images larger than thumbnail size in Heilman Photography's online collection of images.[48]  Under the heading "The Copyright Commandments", a bulleted list appears which states, among other things, "[a]ny unauthorized use constitutes an infringement" and "[p]enalties for infringement are monetary and can be severe."[49]

I find that plaintiffs have failed to demonstrated that any harm from Wiley's alleged acts of infringement could not be adequately compensated in money damages,[50] and thus Plaintiffs fail to demonstrate that they are likely to suffer irreparable

---

[48]    Tr. Day 3, at page 71, lines 13-22.

[49]    Defendant's Exhibit 3.

[50]    My conclusion that plaintiffs would be adequately compensated by money damages should they prevail on the merits of their infringement claims at trial is consistent with the recent Memorandum issued by United States District Judge Jed S. Rakoff which articulated Judge Rakoff's reasons for denying a plaintiff-photographer's motion for a preliminary injunction against defendant Wiley in another matter.  See Psihoyos v. John Wiley & Sons, Inc., 2011 WL 4634172, at *2 (S.D.N.Y. October 4, 2011).

As here, Mr. Psihoyos was in the business of licensing his photographs and had licensed images to Wiley in the past.  Id.  Moreover, Mr. Psihoyos offered no evidence suggesting that Wiley used Mr. Psihoyos' images in a manner that would negatively affect his reputation, business, or goodwill.  Judge Rakoff also concluded that money damages would adequately compensate the plaintiff if he prevailed on the merits and that the damages could be calculated based on Mr. Psihoyos' history of licensing agreements with Wiley.  Id.  Ultimately, Judge Rakoff denied Mr. Psihoyos' request for a preliminary injunction for failure to show irreparable harm.  Id.

harm if the requested injunctive relief is not granted.
Therefore, I deny plaintiffs' Motion for Preliminary Injunction.
See NutraSweet, supra.

### No Irreparable Harm Based on Alleged Criminal Conduct

Plaintiffs contend that Wiley's conduct constitutes criminal copyright infringement in violation of 17 U.S.C. § 506,[51] and that Wiley's criminal victimization of plaintiffs constitutes irreparable harm per se.  However, Plaintiffs cite no legal authority for this proposition in their Motion for Preliminary Injunction and conceded at oral argument that they had located no such authority in the field of intellectual property law or elsewhere.[52]

Section 506 is a penal statute and does give rise to a private cause of action.  Esbin & Alter, LLP v. Zappier, 2011 U.S.Dist. LEXIS 27881, at *5-6 (S.D.N.Y. March 17, 2011). In reaching that same conclusion, the United States Court of Appeals for the Eleventh Circuit held that allowing private

---

[51]    The statute provides, in part, that "[a]ny person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed-- (A) for purposes of commercial advantage or private financial gain".  17 U.S.C. § 506(a)(1).

After quoting the statutory provision defining criminal copyright infringement, plaintiffs argument takes the form of rhetorical questioning: "Can it seriously be argued that the ongoing victimization of a felony crime does not constitute irreparable harm?  Must Plaintiffs watch the pillaging of their intellectual property continue as Wiley drags out the litigation process, arguing all can be made well by money damages?"  Motion for Preliminary Injunction at page 9.

[52]    Motion for Preliminary Injunction at page 9; Tr. Day 5, at page 31, lines 7-14.

plaintiffs to seek relief under Section 506 would be inconsistent with the overall scheme of the Copyright Act and stated that "private parties have adequate means available by which to seek relief under other provisions of the Act, which will yield more appropriate relief." Donald Frederick Evans and Associates, Inc. v. Meadows, 785 F.2d 897, 913 (11th Cir. 1986).

Wiley contends that plaintiffs' assertion that they are the victims of criminal copyright infringement is without basis and should not be considered because no such criminal charges have been filed or established.[53]

Section 506, which plaintiffs contend Wiley has violated, does not provide for a private cause of action. Esbin & Alter, supra. Plaintiffs have not argued or provided any information that a United States Attorney has initiated a prosecution of Wiley, let alone obtained a conviction, under Section 506. Moreover, plaintiffs provide no authority for their proposition, and I have located none, that criminal copyright infringement, if proven, would constitute irreparable harm per se. Therefore, plaintiffs' argument for irreparable harm based on alleged criminal copyright infringement is ultimately unpersuasive.

---

[53]     Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction at page 6, footnote 3.

## Irreparable Harm to Defendant

Defendant Wiley contends that enjoining the distribution of textbooks containing the allegedly infringing photographs will be highly disruptive because universities and colleges have already adopted them for use in classes, and if the books were not available, schools would have to revise their curricula and choose new books, a time consuming process. Therefore, Wiley contends that the injunction would damage defendant's relationship with these schools, resulting in lost business and harm to its reputation.[54]

An order enjoining Wiley from distributing textbooks printed prior to the initiation of this action would present a practical hardship for Wiley and its customers, the educational institutions which purchase its textbooks.  However, an infringer cannot complain about the loss of ability to sell or distribute its infringing products.  WPIX, Inc. v. ivi, Inc., 765 F.Supp.2d 594, 620-621 (S.D.N.Y. 2011) (citing, among others, Apple Computer, 714 F.2d at 1255).

Moreover, plaintiffs do not seek to enjoin the sale or distribution of already-existing textbooks containing allegedly-infringing photographs by Grant Heilman.  Rather, plaintiffs seek only an order enjoining future printing of any additional

---

[54]     Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction at pages 10-12.

textbooks containing plaintiffs' copyrighted photographs where such printing would be either wholly unlicensed, or beyond the scope of a limited license already granted to Wiley by Heilman Photography.[55]  Defendants have not demonstrated that such an order would cause them irreparable harm.

Specifically, Kaye Pace and Lisa Suarez, each of whom I found credible, testified that Wiley has adopted a policy that no textbook printings will be ordered unless permissions for all of the images therein have been obtained or confirmed, I find that Wiley is already refraining from the conduct which plaintiffs seek to preliminarily enjoin.  If I were to order the specific injunctive relief sought by plaintiffs, the burden upon, or harm to, Wiley would be no greater than that which Wiley has elected to impose on itself.  Therefore, I find that Wiley would not likely suffer irreparable harm as a result of plaintiffs' requested preliminary injunction.

### **Public Interest**

The public interest would not be harmed by the issuance of an order granting plaintiffs' requested preliminary injunctive relief.

Defendant Wiley contends that the public interest weighs against the granting of a preliminary injunction.

---

[55]     See Tr. Day 3, at page 83, line 1 through page 86, line 3; Tr. Day 4, at page 60, lines 14-20; Plaintiffs' proposed Order granting preliminary injunction (Document 61).

Specifically, Wiley argues that books should not be viewed in the same way as ordinary objects of commerce.  Wiley relies on Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303, 311 (2d Cir. 1966), in which the United States Court of Appeals for the Second Circuit vacated a preliminary injunction granted where the plaintiff's copyrighted articles were used in a book without permission.[56]

In Rosemont, the Second Circuit Court of Appeals explained that

> [t]he normal reluctance to impose a summary restraint in advance of a full and complete trial is particularly acute in a case such as this which deals with the publication of a book.  Before the court will intrude into an area fraught with sensitivity in its possible impingement upon fundamental democratic and intellectual institutions, it will require a showing by the movant of a right, both legal and factual, in most unequivocal terms.

Rosemont, 366 F.2d at 311.

I recognize the Rosemont court's warning and am cognizant of the implications involved in enjoining the printing of a textbook or other publication.  However, the Second Circuit Court of Appeals vacated the preliminary injunction in Rosemont because the court found, as a matter of law, that the plaintiff was not reasonably likely to succeed on the merits of the infringement claim and the preliminary injunction should,

---

[56]    Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction at pages 10-11.

therefore, have been denied by the district court.  <u>Rosemont</u>,
366 F.2d at 304-306.

Here, by contrast and as discussed above, plaintiffs
have shown that they are reasonably likely to succeed on the
merits of their copyright infringement claims.

Plaintiffs contend that upholding and protecting valid
copyrights serves the public interest and that the public
interest would not be served by permitting defendant to continue
to sell and distribute textbooks full of infringed photographs to
the nation's schools.[57]  However, I note again that plaintiffs do
not seek to enjoin the sale or distribution of already-existing
textbooks which contain allegedly infringing images.  Instead,
plaintiffs seek only to enjoin Wiley from future printings of any
textbooks containing plaintiffs' unlicensed images.[58]

The Third Circuit has stated that because

> Congress has elected to grant certain exclusive
> rights to the owner of a copyright in a protected
> work, *it is virtually axiomatic that the public*
> *interest can only be served by upholding copyright*
> *protections* and, correspondingly, preventing the
> misappropriation of the skills, creative energies,
> and resources which are invested in the protected
> work.

<u>Apple Computer</u>, 714 F.2d at 1255.

Plaintiffs further contends, quoting the Opinion of the
Third Circuit in <u>American Telephone and Telegraph Company v.</u>

---

[57]    Plaintiffs' Motion for Preliminary Injunction at pages 12-13.

[58]    <u>See</u> [Proposed] Order (Document 61).

<u>Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1427 n.8
(3d Cir. 1994), that "[a]s a practical matter if a plaintiff
demonstrates both a likelihood of success on the merits and
irreparable injury, it almost always will be the case that the
public interest will favor the plaintiff" seeking injunctive
relief.[59]

        First, the <u>Winback</u> footnote cited by plaintiffs
concludes as follows: "Nonetheless, district courts should award
preliminary injunctive relief only upon weighing all four
factors." <u>Winback</u>, <u>supra</u>.  As discussed previously in this
Opinion, plaintiffs fail to show that they will likely suffer
irreparable harm if their requested preliminary injunctive relief
is denied.

        Finally, Plaintiffs contend that Wiley's conduct
constitutes criminal copyright infringement, and that it is not
in the public interest to allow the alleged victimization of
plaintiffs to continue.[60]   However, plaintiffs have not shown

---

[59]     Plaintiffs' Motion for Preliminary Injunction at page 12.

[60]     Plaintiffs' Motion for Preliminary Injunction at page 12.  In
support of its argument that the requested preliminray injunction would serve
the public interest, plaintiffs quote the Opinion of Judge William J. Aslup in
<u>Apple Inc. v. Psystar Corporation</u>, 673 F.Supp.2d 943, 950 (N.D.Cal. 2009).

        In his Opinion granting Apple Inc.'s request for a permanent
injunction, Judge Aslup stated that the permanent injunction "would not harm
the public; rather, consistent with the policies underling copyright
protection, an injunction preventing Psystar from continuing to commit
infringing and illegal, *if not criminal*, acts under the Copyright Act...would
ensure that the public will continue to benefit from the fruits of Apple's
labor." <u>Id.</u> (emphasis in plaintiffs' motion).

(Footnote 60 continued:)

that any criminal charges have been filed against Wiley for violation of 17 U.S.C. § 706, much less shown that Wiley has been convicted of criminal copyright infringement with respect to plaintiffs' or any other photographer's copyrighted works.

The United States Supreme Court has stated that "[t]he sole interest of the United States and primary object in conferring the monopoly [of copyright protection] lie in the general benefits derived by the public from the labors of authors." Sony Corporation v. Universal City Studios, Inc., 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). In short, "the public receives a benefit when the legitimate rights of copyright holders are vindicated." Psystar, 673 F.Supp. at 950.

I find that the public interest would not be well served if Wiley were to print additional textbooks containing plaintiffs' unlicensed images. See Apple Computer, supra.

---

(Continuation of footnote 60:)

In Psystar, summary judgment was entered against defendant Psystar Corporation, which was found liable for copyright infringement. Psystar Corporation purchased a copy of Apple's computer operating system, created a "master copy" of the proprietary operating system, installed the master copy on computers produced by Psystar, and then sold those computers to its customers. Psystar, 673 F.Supp. at 947-948.

Judge Aslip's characterization of Psystar's conduct as "infringing and illegal, if not criminal, acts" suggests that he felt Psystar's actions may have constituted "willful" copyright infringement "for purposes of commercial advantage or private financial gain" which could have supported criminal copyright infringement charges under 17 U.S.C. § 706. See Psystar, 673 F.Supp. at 950. Nonetheless, Judge Aslip's comment regarding Psystar's potential criminal liability did not address the essential focus of his public interest discussion, which was to ensure that the public would continue to benefit from the creative fruits of Apple's labor. See id.

Moreover, Wiley's argument that a preliminary injunction in this case would not serve the public interest because it would be "highly disruptive" to the college and university professors who have already adopted these college textbooks for use in their classes is unpersuasive.

The only injunctive relief requested by plaintiffs is an order preventing further printings of textbooks which include any of plaintiffs' unlicensed images.  Wiley's argument that such an order would be highly disruptive to its customers is undermined by the testimony presented and argument during the preliminary injunction hearing which showed that Wiley has already adopted a policy under which textbooks containing plaintiffs' photographs will not be printed unless all licenses are confirmed or another image is substituted for plaintiffs' unlicensed image.

Ultimately, preventing the printing of additional textbooks containing plaintiffs' unlicensed images serves to protect plaintiffs' copyrights and, as such, would not harm the public interest.  See Apple Computer, supra.

## CONCLUSION

Plaintiffs bear the burden of establishing their entitlement to the extraordinary remedy of a preliminary injunction.  NutraSweet, supra.  Because plaintiffs have not met this burden, I deny their Motion for Preliminary Injunction.

- 38 -

For the reasons articulated in this Opinion, I conclude that Grant Heilman and Heilman Photography have shown a reasonable likelihood of success on the merits of their copyright infringement claim against Wiley.  I further conclude that Wiley is not likely to suffer irreparable harm as a result of the preliminary injunction requested by plaintiffs, and that the public interest would not be harmed by granting the requested preliminary injunction.

However, because plaintiffs have not shown that they will suffer immediate, irreparable harm absent the requested preliminary injunctive relief, I deny plaintiffs' Motion for Preliminary Injunction.